
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON,            )
                                )        No. 34763-0-III
            Respondent,         )        (consolidated with
                                )        No. 35537-3-III)
    v.                          )
                                )
ERIC ALLEN HAGGIN,              )
                                )
            Appellant.          )        UNPUBLISHED OPINION
                                )
                                )
In the Matter of the Personal Restraint of )
                                )
ERIC ALLEN HAGGIN,              )
                                )
            Petitioner.         )

KORSMO, J. — Eric Haggin, by appeal and personal restraint petition (PRP),

challenges the outcome of a resentencing hearing directed by this court following his first

appeal. *State v. Haggin*, 195 Wn. App. 315, 381 P.3d 137 (2016) (published in part). We

affirm the sentence and dismiss the PRP.

FACTS

A Kittitas County jury convicted Mr. Haggin of eight offenses: two counts of first

degree unlawful possession of a firearm (UPF), possession of methamphetamine with

intent to deliver, possession of heroin with intent to deliver, second degree theft, witness tampering, and two counts of use of drug paraphernalia. The latter two offenses are misdemeanors, while the remainder are felony crimes subject to sentencing under the Sentencing Reform Act OF 1981 (SRA), chapter 9.94A RCW. The two drug possession offenses were found by the jury to have been committed while armed with a firearm.

In the first appeal, this court affirmed the eight convictions, but identified sentencing error related to the two UPF convictions and directed that they be sentenced concurrently. *Haggin*, 195 Wn. App. at 324. The case was remanded to the superior court for resentencing. *Id*. In the unpublished portion of the case, we also remanded for the trial court to determine whether any of Mr. Haggin's prior drug convictions served to double the maximum sentence for the two drug offenses. *Haggin*, No. 33280-2-III, slip op. (unpublished portion) at 31-33, http://courts.wa.gov/opinions/pdf/332802.pdf. No arguments were raised concerning the offender score.

The remand resulted in two hearings. At the first resentencing hearing, the parties addressed the prior drug convictions that operated to double the maximum sentence for the two drug offenses. Report of Proceedings (RP) (Sept. 19, 2016) at 8-10. Defense counsel agreed that they had been presented at the original sentencing hearing, but argued that they should not be considered at resentencing because they had not been entered as exhibits at the earlier hearing. *Id*. at 11. Defense counsel also argued that the two drug offenses and the two UPF offenses each should only be counted as one offense for

2

scoring purposes and requested that the trial court impose a sentence at the low end of the range. *Id*. at 12.

The trial court recognized an offender score of "9+" and imposed a sentence of 192 months by imposing the top end sentence of 120 months for each drug offense, to be served concurrently, and imposing firearm enhancements on each count that would run consecutively. *Id*. at 17-18; Clerk's Papers (CP) at 169. The new sentence was 250 months less than the previous sentence. Mr. Haggin again appealed to this court.

While this second appeal was pending, the parties agreed to conduct a second resentencing hearing in order to clarify the judgment and sentence for the department of corrections and make a better record for the appeal. RP (April 24, 2017) at 3-5. At the second resentencing hearing, the parties discussed Mr. Haggin's prior misdemeanor convictions that served to prevent his oldest felony offenses from "washing out" of the offender score. *Id*. at 3-5. Defense counsel conceded that the offenses did not wash out and the offender score was at least 10. *Id*. at 5.

Defense counsel also again argued that the two drug offenses and the two UPF offenses should each only be counted as one offense for scoring purposes, thereby keeping the offender score at 10 rather than being 11 or 12. *Id*. at 5-6. He pointed out that the court had previously rejected this argument. *Id*. at 6. He asked the court to consider treating the drug and firearm offenses as one each and decide whether the court would still impose a maximum sentence if the offender score was 10 instead of 12. *Id*.

3

After clarifying that he could act while the case was on appeal, the trial court

rejected the resentencing request:

> I haven't heard anything today that makes me thing I should change (inaudible). Okay?
>
> So, I guess that would mean that I'm affirming what I did before. . . .
>
> And,—the high end of the standard range is a standard range sentence. (Inaudible) nine,—twelve, (inaudible)—the high end of the standard range—(Inaudible) standard range. It's a standard range sentence. I don't know how—(inaudible) novel to me (inaudible).

*Id*. at 8. After the prosecutor noted that the offender score needed to be correct, the court

agreed: "It has to be right. It has to be right. I appreciate that." *Id*.

This court empowered the trial court to enter an order amending judgment and

sentence and allowed the parties to supplement the record. The trial court entered a

written order "amending certain portions" of the judgment and sentence. CP at 184. A

panel subsequently considered this appeal without hearing argument.

## ANALYSIS

The sole issue remaining in the direct appeal is a contention that the trial court

erred in calculating the offender score due to the same criminal conduct argument and

asks for a remand to once again ask the court to consider a lesser sentence. The PRP

argues that the firearm enhancements were not authorized by the jury verdict. We

address the two arguments in the order listed.

*Offender Score*

Mr. Haggin contends that he can challenge his standard range sentence because his offender score was 10 instead of 12. Since the trial court correctly computed the score at 9+ and rejected his argument that a more precise offender score mattered to his sentence, he cannot show error.

The basic sentence computation rules have not changed since the enactment of the current statutory scheme. Under the SRA, a felon will be sentenced within a specified sentence range dependent on the seriousness of the offense and the offender's prior criminal history, unless aggravating or mitigating circumstances exist. RCW 9.94A.505(2)(x), .530(1), .535; s*ee generally State v. Jones*, 159 Wn.2d 231, 236-237, 149 P.3d 636 (2006); *State v. Nordby*, 106 Wn.2d 514, 516, 723 P.2d 1117 (1986). The offender score is calculated by counting the prior and current felony convictions in accordance with the rules for each offense. RCW 9.94A.525. Current felony offenses are treated as if they were prior offenses when scoring the other crimes being sentenced. RCW 9.94A.525(1); RCW 9.94A.589(1)(a). In cases, like this one, where a sentence enhancement exists, the enhancement is added to the base sentence. RCW 9.94A.530(1).

The legislature capped the offender score side of the sentencing grid at "9 or more." RCW 9.94A.510. In calculating the offender score, the trial court has discretion to count multiple offenses that encompass the same criminal conduct as one. RCW 9.94A.525(5)(a)(i); RCW 9.94A.589(1)(a). Crimes encompass the "same criminal

conduct" if they occur at the same time and place, involve the same victim, and have the

same criminal intent. RCW 9.94A.589(1)(a). Discretion is abused when it is exercised

on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d

12, 26, 482 P.2d 775 (1971).

The legislature also has prohibited challenges to standard range sentences. "A

sentence within the standard sentence range . . . for an offense shall not be appealed."

RCW 9.94A.585(1). This means, generally, that a party cannot appeal a standard range

sentence. *State v. Williams*, 149 Wn.2d 143, 146, 65 P.3d 1214 (2003). Thus, "so long

as the sentence falls within the proper presumptive sentencing ranges set by the

legislature, there can be no abuse of discretion as a matter of law as to the sentence's

length." *Id*. at 146-147. However, an appellate court may review a standard range

sentence resulting from constitutional error, procedural error, an error of law, or the

failure to exercise discretion. *E.g.*, *id.* (State can appeal determination of a defendant's

eligibility for a sentencing alternative); *State v. Mail*, 121 Wn.2d 707, 712, 854 P.2d 1042

(1993) (defendant can challenge a trial court's failure to follow a specific sentencing

provision); *State v. Ammons*, 105 Wn.2d 175, 183, 713 P.2d 719, 718 P.2d 796 (1986)

(defendant can challenge trial court's failure to comply with mandatory procedures).

6

Mr. Haggin argues that the trial court erroneously failed to treat the two drug offenses as one and the two firearms as one, a failing that would reduce his offender score from 12 points to 10 points.[1] He contends that the court can not impose even a standard range sentence without correctly calculating the offender score. His arguments fail for a couple of reasons.

Initially, it is doubtful that Mr. Haggin can show that the court abused its discretion in concluding that each of the offenses would score separately. He did not raise this issue until the first resentencing and the trial court did not comment on why it rejected the argument. Mr. Haggin has not provided any authority suggesting that the trial judge was required to place his reasoning on the record, nor did the defense ask the court to articulate its ruling on this issue. It is difficult to demonstrate that reasoning was untenable where that reasoning is not in the record.

But even assuming that the court erred in its treatment of the same criminal conduct issue, it did not err in its computation of the offender score. The court scored the defendant as "9+". When more than 8 points count toward the offender score, the legislature categorizes the offender score as "9 or more." RCW 9.94A.510. Even under

---

[1] In his reply brief, appellant contends that the trial judge failed to reconsider the same criminal conduct issue at the second resentencing. However, after deciding that he could consider the issue because this court had not ruled on it, the trial judge squarely stated that he was affirming his previous ruling. RP (April 24, 2017) at 8. The judge did *consider* the issue; he simply did not change his position.

the defense theory that there are 10 points that count toward the offender score, the trial court correctly placed Mr. Haggin in the "9 or more" category. The offender *score* is correct. Mr. Haggin has not demonstrated any error.

Mr. Haggin points out that our court on several occasions has stated that the trial court must always correctly calculate the sentence *range*, citing to *State v. Tili*, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003).[2] While it is axiomatic under the SRA that a correct offender score must be determined in order to ascertain the proper sentencing range, Mr. Haggin cites to no authority suggesting that a specific number must be assigned to an offender score that correctly belongs in the "9 or more" *scoring* category. In dealing with cases, such as *Tili*, where the scoring category is less than "9 or more," an error in the offender score leads to an erroneous sentence range. *Id.* (offender score of 2); *State v. McCorkle*, 137 Wn.2d 490, 973 P.2d 461 (1999) (possible offender score ranged from 6 to 13). That is not the situation when an offender score is 10 or 12 or 252. All of

---

[2] This statement was first used by the Washington Supreme Court in *State v. Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997). There, the sentencing range for the offense had been increased by the legislature during the latter half of the period of time covered by the charging document. The jury did not determine when the crimes occurred, so the court determined that the trial judge had erred by applying the current range rather than the more lenient range in effect at the beginning of the charging period. The court also had imposed an exceptional sentence by running the two offenses consecutively to each other, although the basis for the exceptional sentence was not identified in the opinion. Since the exceptional sentence was based on the incorrect sentence range, the court refused to find the error harmless. *Id.* at 190. Subsequent courts read the *Parker* language as requiring trial courts to correctly calculate the sentence range before an exceptional sentence could be upheld. *E.g.*, *Tili*, 148 Wn.2d at 358.

those scores are simply "9 or more." The associated sentencing range does not change due to the specific number of points beyond 8 that apply to the offender before the court.

In those instances where appellate courts have even discussed the accuracy of an offender score in the "9 or more" category, it has always been either in the context of determining the applicable range or in the application of the "free crimes" aggravating factor.[3] *E.g.*, *McCorkle*, 137 Wn.2d at 494 (potential range ran from 6 to 10).

Although the foregoing demonstrates that Mr. Haggin has not proven any error occurred at the resentencing, his appeal also fails because the error he does assert, if it existed, was clearly harmless. This aspect of the case is controlled by the decision in *State v. Bobenhouse*, 166 Wn.2d 881, 214 P.3d 907 (2009). There, as here, the trial court allegedly abused its discretion when it failed to find that two of the offenses constituted the same criminal conduct. *Id.* at 896. Unlike this case, the trial court had relied on the free crimes aggravating factor to impose an exceptional sentence. *Id.* Due to the high offender score, any error was harmless:

> Here, Bobenhouse's offender score for each of the child rape sentences is 20. A score of 9 permits imposing a sentence at the highest end of the standard sentencing range. . . . In other words, even if Bobenhouse's current offenses were treated as the "same criminal conduct" for purposes of sentencing, his offender score is greater than 9, which

---

[3] A sentence can be "too lenient" under the aggravating factor found in RCW 9.94A.535(2)(c) if the high offender score results in other current offenses going unpunished. As a result, the additional offenses inflict no punishment because they do not increase the offender's range and are served concurrently to the other sentences. *E.g.*, *State v. Alvarado*, 164 Wn.2d 556, 561, 192 P.3d 345 (2008).

would result in some current offenses going unpunished if an exceptional
sentence was not imposed. Any error in not treating Bobenhouse's crimes
as the "same criminal conduct" was harmless.

*Id*. at 896-897. The court stated its conclusion on this point: "the trial court's failure to

treat a defendant's crimes as the same criminal conduct for purposes of calculating the

defendant's offender score can constitute harmless error." *Id*. at 897.

That point is even stronger in this case where the court did not impose an

exceptional sentence based on a high offender score. Instead, the defense made its

argument that the trial judge should not impose a high-end standard range sentence

because Mr. Haggin's offender score was only 10 instead of 12. The court heard the

defendant's theory and rejected it. If there was error on the same criminal conduct issue,

it most assuredly did not affect the outcome of this standard range sentence.

The appeal fails to establish error or prejudice. The judgment is affirmed.

*Personal Restraint Petition*

The PRP presents a claim that the amended information only charged a deadly

weapons enhancement instead of a firearm enhancement. Rather than treat this as a

notice issue, however, the petition likens the alleged error to the jury returning an

unauthorized verdict. Because the first contention fails on the facts, both aspects of his

claim are without merit.

10

Relief will only be granted in a PRP if there is constitutional error that caused substantial actual prejudice or if a nonconstitutional error resulted in a fundamental defect constituting a complete miscarriage of justice. *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 409, 114 P.3d 607 (2005). It is the petitioner's burden to establish this "threshold requirement." *Id.* To do so, a PRP must present competent evidence in support of its claims. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-886, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992). If the facts alleged would potentially entitle the petitioner to relief, a reference hearing may be ordered to resolve the factual allegations. *Id.* at 886-887.

Here, the amended information in each of the drug counts alleges the crime of possession of a controlled substance with intent to deliver, and then states:

> And furthermore, at the time of the commission of the crime, the Defendant or an accomplice was armed with a firearm; contrary to Revised Code of Washington 9.94A.825.

CP at 10. Each of the two special verdict forms asked the jury if Mr. Haggin was "armed with a firearm" during the commission of the controlled substance crime. CP at 81, 83. The jury also was instructed on the definitions of "firearm" and "deadly weapon." CP at 49, 75.

Since prior to the effective date of the SRA, the statute has authorized special allegations and findings regarding use of a deadly weapon, with firearms being the epitome of a deadly weapon. *See* LAWS OF 1983, ch. 163, § 3. In 1995, as part of the

11

Hard Time for Armed Crime Initiative, firearms were singled out from other deadly weapons for even harsher additional punishment.[4] *See, generally*, LAWS OF 1995, ch. 129, § 2 (Initiative 159). The firearm enhancement was codified together with the deadly weapon enhancement. *See* former RCW 9.94A.310 (1996). The firearm enhancement currently is found in RCW 9.94A.533(3) and the deadly weapon enhancement is in RCW 9.94A.533(4). Throughout the existence of the SRA, the deadly weapon definition and special allegation have been divorced from the punishment imposed for the finding. *Compare* former RCW 9.94A.125 (1985) and former RCW 9.94A.310 (1985) with current RCW 9.94A.533 and RCW 9.94A.825.

The first paragraph of RCW 9.94A.825 authorizes the return of a deadly weapon finding by the trier-of-fact for the case, whether it be a judge or a jury. The second paragraph defines the meaning of "deadly weapon" and includes "pistol, revolver, or any other firearm" within that definition. *Id*. As it has been since the enactment of the SRA, a firearm is a deadly weapon as a matter of law. There is no separate statute authorizing the filing of a firearm enhancement or the return of a firearm finding apart from the inclusion in the finding authorized by RCW 9.94A.825.

---

[4] The Initiative also increased the punishment for other deadly weapons.

Mr. Haggin argues that since the charging document made reference to subsection .825, he assumed that it was merely putting him on notice that a deadly weapon, as opposed to a firearm, was being charged. He provides no factual or legal support for that claim. He did not assert surprise or lack of notice at trial, nor in the first appeal, nor at any of the three sentencing proceedings held in this case. He did not challenge the jury verdict forms at any time. He has not met his burden of establishing this factual assertion. *Rice*, 118 Wn.2d at 885-886.

The claim also is without legal merit. The charging document clearly told Mr. Haggin that he was armed with a "firearm" in each of the two drug cases. He has no basis for claiming that the statutory deadly weapon definition countermanded the assertion of the language of the charging document merely because there was a subsequent citation to RCW 9.94A.825. Properly read, the charging document put Mr. Haggin on notice that the firearm allegation would be determined at trial by the trier-of-fact. There was no reference to the statutes defining the amount of punishment that follows from either a firearm or a deadly weapon finding. In short, there was no reason to believe that the deadly weapon enhancement of RCW 9.94A.533(4) applied in place of the firearm enhancement of RCW 9.94A.533(3).

The PRP has not met its heavy burden of establishing significant prejudicial error. It is without merit.

No. 34763-0-III (Consolidated with 35537-3-III)
*State v. Haggin; In re Pers. Restraint of Haggin*

The judgment and sentence is affirmed. The petition is dismissed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Pennell, A.C.J.

_____
Siddoway, J.

14